UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALICIA ROBINSON,

               Plaintiff,

    -vs-

THE CITY OF BUFFALO, THE CITY OF
BUFFALO POLICE DEPARTMENT, DANIEL
DERENDA, COMMISSIONER OF THE CITY OF
BUFFALO POLICE DEPARTMENT, BUFFALO
POLICE NARCOTICS LIEUTENANT PAUL
DELANO, BUFFALO POLICE NARCOTICS
DETECTIVE PATRICK O'ROURKE, Former
BUFFALO POLICE NARCOTICS OFFICER
DETECTIVE RAY KRUG, LIEUTENANT
NORMAN G HARTMAN OF THE INTERNAL
AFFAIRS DIVISION OF THE BUFFALO
POLICE DEPARTMENT, THE CITY OF
LACKAWANNA, LIEUTENANT AARON BRENNAN
OF THE CITY OF LACKAWANNA POLICE
DEPARTMENT, THE COUNTY OF ERIE, ERIE
COUNTY SHERIFF TIMOTHY HOWARD, and
to this point at least ONE OFFICER
JOHN DOE OF THE CITY OF THE BUFFALO
POLICE DEPARTMENT, and ONE OFFICER
JOHN DOE OF THE ERIE COUNTY
SHERIFF'S DEPARTMENT,

               Defendants.

**DECISION and ORDER**
**No. 1:16-cv-00432(MAT)**

---

## INTRODUCTION

Represented by counsel, Alicia Robinson ("Robinson" or "Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 against the named defendants, alleging violations of rights under the United States Constitution and New York State law. In particular, Plaintiff alleges that Lieutenant Aaron Brennan of the City of Lackawanna Police Department illegally procured a search

warrant that was unlawfully executed by officers of the City of Buffalo Police Department at her home on August 29, 2013. Plaintiff further states that during the execution of the warrant, former BPD Narcotics Officer Ray Krug ("Krug") unjustifiably and without provocation fatally shot one of her dogs, Sarabi, a two-year-old female Rhodesian Ridgeback. Plaintiff asserts that the second shot fired by Krug, which resulted in Sarabi's death, diffused shotgun pellets that struck Plaintiff in the left knee. Following her arrest and transport to the Erie County Holding Center, Plaintiff alleges that Erie County Sheriff Timothy B. Howard ("Sheriff Howard") and the "John Doe" City of Buffalo Police Department officer delayed transferring her to the Erie County Medical Center for treatment of her alleged injuries.

Presently before the Court is the Motion for Judgment on the Pleadings (Dkt #18) by defendants the County of Erie ("Erie County"), Sheriff Howard, and "One Officer John Doe of the Erie County Sheriff's Department" (collectively, "the County Defendants"). The County Defendants seek an order pursuant to, inter alia, Rules 4(m) and 12(c),[1] dismissing the complaint as against the County Defendants with prejudice, due to Plaintiff's failure to timely effect service of legally sufficient process in accordance with the requirements of Rules 4(a), 4(c)(l), 4(e), and 4(m) prior to the expiration of the applicable three-year statute

---

[1] Citations to "Rules" herein refer to the Federal Rules of Civil Procedure unless otherwise specified.

of limitations; and due to Plaintiff's failure to demonstrate good cause for such failure. (See Dkt ##18 through 26).

Also before the Court is the First Motion to Adjourn, First Motion to Dismiss for Lack of Jurisdiction Dismissing Plaintiff's Complaint with Prejudice, and First Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint with Prejudice (Dkt #29) by defendants Paul Delano, Daniel Derenda, Norman G. Hartman, Ray Krug, Patrick O'Rourke, "One Officer John Doe of the City of Buffalo Police Department," The City of Buffalo ("the City of Buffalo"), and the BPD (collectively, "the City Defendants") seeking an order and Judgment pursuant to Rules 4(m) and/or 12(b)(2), 12(b)(4), 12(b)(5), 12(c) and/or 12(h)(3) of the Federal Rules of Civil Procedure, granting judgment on the pleadings dismissing the Complaint as against the City Defendants, with prejudice, upon the grounds of insufficient process, insufficient service of process, and lack of personal jurisdiction because Plaintiff failed to effectuate timely and proper service of legally sufficient process upon any of them in accordance with the requirements of Rules 4(a), 4(c)(1), 4(e), and 4(m), and the statute of limitations has expired. (See Dkt ##29-1 through 29-10).[2]

---

[2] The City of Lackawanna and Lieutenant Aaron Brennan of the City of Lackawanna Police Department have not moved to dismiss the complaint; nor have they joined in the County Defendants' or the City Defendants' motions seeking dismissal of the Complaint.

Plaintiff filed a Response (Dkt #31) and a Memorandum of Law in Opposition (Dkt ##33-1 through 33-8) to the County Defendants' motion.

The County Defendants filed a Reply Memorandum of Law (Dkt #42), a several Reply Affidavits (Dkt ##37 through 41). The City Defendants filed a Reply Memorandum of Law (Dkt #43).

The motions have been fully submitted on the papers. For the reasons discussed below, the Court grants the motions by the County Defendants and the City Defendants and dismisses the Complaint with prejudice.

## BACKGROUND

On May 29, 2016, Plaintiff commenced this action by filing her Complaint (Dkt #1). On May 31, 2016, the Clerk of Court of the United States District Court for the Western District of New York issued summonses of the same date as to all of the named defendants (See Dkt ##2-1 through 2-12).

Also on May 31, 2016, Courtney Jakubec ("Jakubec"), then employed by Plaintiff's attorney, Matthew Albert, Esq. ("Plaintiff's Attorney" or "Attorney Albert") as his office manager, delivered copies of the Complaint, unaccompanied by any summonses, to the Erie County Department of Law, the Erie County Sheriff's Office, the City of Buffalo Law Department and the BPD.

Several days later, on June 2, 2016, Jakubec returned to the Erie County Department of Law and delivered a summons addressed to the "County of Erie." This summons was dated May 29, 2016, *prior to*

the date that the Clerk of Court issued the official summonses in this matter. Also on June 2, 2016, Jakubec returned to the Erie County Sheriff's Office and delivered a summons dated May 29, 2016, and addressed to "Erie County Deputy Sheriff John Doe." However, Jakubec did not deliver a summons to named defendant Sheriff Howard. Additionally, on June 2, 2016, Jakubec delivered summonses, dated May 29, 2016, to the City of Buffalo Law Department and the BPD. In addition to the incongruity regarding the dates of issuance, the summonses delivered by Jakubec on June 2, 2016, contained several other errors. Specifically, they bore the incorrect case number (1:14-cv-00342 instead of 1:16-cv-00342), did not list all of the parties, lacked the Clerk of Court's signature, and lacked the official seal of the United States District Court for the Western District of New York.

On June 18, 2016, Plaintiff filed "Proofs of Service" signed by Jakubec and dated May 31, 2016. (Dkt #3 & #3-1 through #3-11).[3]

---

[3]

It appears that, as the County Defendants argue, Jakubec's May 31, 2016 proofs of service contain untrue statements. For instance, in the proof of service regarding Erie County (Dkt #3-8) Jakubec declared, under penalty of perjury, "I left the summons at the individual's residence or usual place of abode with Sue on the 16h floor, a person of suitable age and discretion who resides there, and on [blank] and mailed a copy to the individual's last known address." Disregarding the fact that Erie County is not an "individual" and Jakubec therefore used the wrong proof of service, Assistant Erie County Attorney Kenneth Kirby, Esq. ("Attorney Kirby") has averred that, on May 31, 2016, there was no person named "Sue" working at the Erie County Department of Law. More importantly, no "summons" was delivered to anyone at the Erie County Department of Law on May 31, 2016. Rather, Erie County Department of Law employee Sandra McCarthy avers in her supporting affidavit (Dkt #20, ¶ 3 & Ex. A) that only a copy of the Complaint was delivered that day. Similarly, the proofs of service as to Erie County Deputy Sheriff John Doe" (Dkt #3-10) and Sheriff Howard (Dkt #3-9) appear to contain false statements. In them, Jakubec declared under penalty of perjury that she delivered summonses to Erie County Sheriff's Office on May 31, 2016. However, Sheriff Howard's secretary, Linda Pawenski (Dkt #23, ¶ 3 & Ex. A), avers that only a copy of the Complaint was delivered on that date.

On June 20, 2016, the City Defendants filed and served an answer (Dkt #7), asserting defenses of insufficient service of process, lack of personal jurisdiction, and expiration of the statute of limitations, among other defenses.

Also on June 20, 2016, the County Defendants filed and served a notice of appearance (Dkt #4) and their Answer (Dkt #5), setting forth defenses of insufficient process, insufficient service of process, lack of personal jurisdiction, and the expiration of the statute of limitations. On July 1, 2016, the County Defendants filed and served, as of right, their Amended Answer (Dkt #8) with affirmative defenses.

On August 30, 2016, one day after the expiration of the 90-day period under Rule 4(m), Plaintiff's Attorney caused to be delivered copies of the Court-issued summonses (Dkt ##2-9, 2-12, and 2-10, respectively), dated May 31, 2016, addressed to "County of Erie, 95 Franklin Street, Buffalo, New York 14202;" "Erie County Deputy Sheriff John Doe, 10 Delaware Avenue, Buffalo, New York 14202;" and "Erie County Sheriff Timothy Howard, 10 Delaware Avenue, Buffalo, New York 14202." Kenneth Kirby, Esq., attorney for the County Defendants, rejected service and returned these documents to Plaintiff's Attorney.

### RULES 12(B)(2) and (5)

## I.   Rule 12(b)(2)

Rule 12(b)(2) provides that the defense of "lack of personal jurisdiction" may be asserted on motion. FED. R. CIV. P. 12(b)(2).

-6-

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996) (citation omitted); accord, e.g., In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003). Where, as here, no discovery has occurred, a plaintiff may defeat a motion to dismiss under Rule 12(b)(2) based on "legally sufficient allegations" that the court has jurisdiction." Id. at 566-67 (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.) ("Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by *pleading in good faith*, see FED. R. CIV. P. 11, legally sufficient allegations of jurisdiction.") (emphasis supplied), cert. denied, 498 U.S. 854 (1990)).

## II. Rule 12(b)(5)

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004) (footnote with citations omitted). "Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." Anzulewicz v. National Fuel Gas Supply Corp., 208 F.R.D. 47, 49 n. 5 (W.D.N.Y. 2002). Once a defendant raises a challenge to the sufficiency of service of process, the plaintiff bears the burden

of proving that service was adequate. <u>Howard v. Klynveld Peat Marwick Goerdeler</u>, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), <u>aff'd</u>, 173 F.3d 844 (2d Cir. 1999). In considering a motion to dismiss pursuant to Rule 12(b)(5) based on insufficient process, the court "must look to matters outside the complaint to determine whether it has jurisdiction." <u>Darden v. DaimlerChrysler N.A. Holding Corp.</u>, 191 F. Supp.2d 382, 387 (S.D.N.Y. 2002); <u>see</u> <u>also</u> 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1364 (3d ed. 2004) ("The validity of these defenses [in Rules 12(b)(1) to 12(b)(5)] rarely is apparent on the face of the pleading and motions raising them generally require reference to matters outside the pleadings on a variety of questions such as the citizenship or residence of the parties, the activities of the defendant in the forum state, and the details of the service of process.").

## DISCUSSION

## I.   Deficiencies in Service

### A. Insufficiencies in the Process Itself

The Federal Rules of Civil Procedure dictate the content that a summons must contain. <u>See</u> FED. R. CIV. P. 4(a)(1)(A)–(G). Among other things, a summons must "name the court and the parties[,]" <u>id.</u> (4)(a)(1)(A), "be signed by the clerk[,]" <u>id.</u> 4(a)(1)(F), and "bear the court's seal." <u>Id.</u> 4(a)(1)(G). Here, the summonses delivered by Plaintiff's Attorney's former office manager, Jakubec, on June 2, 2016, suffered from a number of infirmities: They bore the incorrect case number (1:14-cv-00342 instead of 1:16-cv-00342),

did not list all of the parties, lacked the Clerk of Court's signature, lacked the official seal of the United States District Court for the Western District of New York, were unaccompanied by the complaint, and were dated two days *prior to* the date the Clerk of Court had issued the official summonses in this matter. For all of these reasons, the process that Plaintiff attempted to serve on June 2, 2016, was insufficient. See, e.g., Macaluso v. New York State Dept. of Envtl. Conservation, 115 F.R.D. 16, 17 (E.D.N.Y. 1986) ("Obviously, the process that plaintiffs attempted to serve on July 10 and 11 was insufficient because the summons was not issued by the clerk, and did not bear either the clerk's signature or the court's seal.") (citing FED. R. CIV. P. 4(a), (b)). Because Plaintiff is not pro se, it is difficult to treat the multiple deficiencies in the summonses as mere technical errors; rather, the Court finds that they amount to a "complete disregard[,]" Macaluso, 115 F.R.D. at 17, of Rule 4(a)'s clear requirements. See Macaluso, 115 F.R.D. at 18 ("The Court does not view service of an unsigned, unsealed summons not issued by the court clerk as a mere technical defect. Instead, it amounts to a complete disregard of the requirements of process set forth clearly and concisely in Rule 4."). Accordingly, the Court declines to exercise its discretion to grant leave to amend process. Id. (citing Gianna Enterprises v. Miss World (Jersey) Ltd., 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982)).

**B.    Insufficiencies in the Service of Process**

**1.    The Second Attempt at Service Was Untimely**

The version of Rule 4(m) effective on December 1, 2015, and the operative version for this Court's analysis, changed the amount of time for service to be accomplished from 120 days to 90 days. Rule 4(m) currently provides in relevant part that

> [i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

FED. R. CIV. P. 4(m).

Here, Plaintiff's complaint was filed electronically on Sunday, May 29, 2016. Ninety (90) days from that date was Saturday, August 27, 2016. By operation of Rule 6(a)(1)(C), Plaintiff would have had until Monday, August 29, 2016, to effect service and still be within Rule 4(m)'s 90-day period. However, Plaintiff's Attorney's paralegal, Jessica Morrill ("Morrill"), did not deliver court-issued summonses to the County Defendants or City Defendants until the day after the 90-day deadline, i.e., Tuesday, August 30, 2016. The Court therefore must consider whether Plaintiff has shown "good cause" for the failure of timely service.

Before proceeding, the Court must address Plaintiff's Attorney's refusal to concede that there were any defects in the service itself or the process utilized. He argues that "[t]hough

lacking in artistry, Plaintiff did perfect service on all named defendants . . . by virtue of putting them on notice of the pending action, and then, pursuant to the Administrative Procedures for Electronic Filing for the Western District, all Defendants received proper service of their respective court issued summonses and complaints when their attorneys, by way of local rule, accepted service of such documents by appearing on the matters [sic] electronically on June 20, 2016." (Plaintiff's Memorandum of Law ("Pl's Mem.") (Dkt #33, p. 11 of 14; some initial capitals omitted)). Plaintiff's argument is flawed on multiple grounds. First, Plaintiff did *not* perfect service on "all Defendants" "by virtue of putting them on notice of the pending action" through the filing of the Complaint, followed by Jakubec's service, on June 2, 2016, of the defective summonses. As noted above, Jakubec only delivered a summons addressed to Deputy Sheriff John Doe; she did not deliver a summons addressed to Sheriff Howard, and therefore Plaintiff cannot credibly argue that Sheriff Howard was put on notice of her lawsuit. With regard to Lieutenant Norman G. Hartmann ("Hartmann"), the City Defendants indicate that he retired from BPD effective December 31, 2013. (Dkt #29-9). Since Hartmann was not an employee of the BPD at the time Plaintiff attempted to serve him, the BPD could not be considered his "place of business" for purposes of service of process, and it was not authorized to accept service of process on his behalf. See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298 (3d Cir. 1995) (defendant corporation was

no longer authorized to conduct business in Oklahoma; therefore, the Secretary of State of Oklahoma was no longer the authorized agent to accept service of process).

In any event, "actual notice is no substitute for valid service of process." In re Crysen/Montenay Energy Co., 166 B.R. 546, 554 (S.D.N.Y. 1994) ("[T]he fact that E & C had actual knowledge of the action is not sufficient to deny its motion to dismiss, in that actual notice is no substitute for valid service of process.") (citing Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987) ("[B]efore a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum."); Martin v. New York State Dept. of Mental Hygiene, 588 F.2d 371, 373 (2d Cir. 1978) ("A showing that the defendant has had actual notice of the lawsuit is not sufficient to bar a motion to dismiss under Rule 12(b)(2).").

Second, Plaintiff's contention that she effected proper and timely service because the City Defendants' and County Defendants' "attorneys, by way of local rule, accepted service of such documents by appearing on the matters electronically on June 20, 2016," is controverted by the Second Circuit's Martin case. In Martin, the plaintiff argued that one of the defendants, Keill, "waived [Rule 4's] requirement [of personal service with a summons and complaint] and "submitted to the jurisdiction of the district

court, merely because Keill allowed the Attorney General to raise in that forum the defenses of lack of personal jurisdiction and insufficiency of service of process." Id. The Second Circuit rejected this argument, noting that Rule 12(b) "was designed to allow a moving party to challenge the court's jurisdiction." Id. Here, two days after Plaintiff filed Jakubec's Affidavits of Service, the County Defendants' Attorney filed a Notice of Appearance and concomitantly filed an Answer, 2016, asserting the defenses of insufficient process, insufficient service of process, lack of personal jurisdiction, and untimeliness under the applicable statute of limitations. Plaintiff here cannot "plausibly contend," Martin, 588 F.2d at 373, that the County Defendants' Attorney "accepted" Plaintiff's service of process on behalf of any of his clients, given that the Answer asserted various affirmative defenses were based on insufficient process and insufficient service of process. See id. Plaintiff raises similar arguments with regard to the City Defendants, asserting that Robert E. Quinn, Esq. ("Attorney Quinn") informed Morrill that he "already had everything" (Dkt #33-1 at 17). According to Plaintiff, this purported statement by Attorney Quinn equates to an admission that the City of Buffalo was properly served. However, as did the County Defendants, the City Defendants raised affirmative defenses based on insufficient service and lack of person jurisdiction, and at no time affirmatively waived any objections to jurisdiction and service.

## 2. "Good Cause" Does Not Exist for the Failure to Effect Timely Service

The Court turns now to the question of whether Plaintiff has shown "good cause" such that the Court must extend time to serve under Rule 4(m). Plaintiff argues that "should the Court somehow find that the defendants [sic] did not provide timely service," "the sudden illness of process server Jessica Morrill constitutes sufficient good cause as to why process was served 91 days after the original filing of the complaint in this action." (Pl's Mem. at 18, Dkt #33-1 at 4 of 13; some initial capitals omitted). Plaintiff has submitted a statement signed by Morrill which purports to be a sworn affidavit (Dkt #33-8).

Before proceeding, the Court addresses the County Defendants' argument that the document signed by Morrill contains several irregularities rendering its admissibility suspect. Under New York law, the "[j]urat" required on an affidavit is "a clause wherein an attesting officer certifies, among other matters, that the subscriber has appeared before him and sworn to the truth of the contents thereof." N.Y. PENAL LAW § 210.00(7). The jurat on Morrill's statement states, "[s]ubscribed and [s]worn to the 11th day of Dec. 2016" (Dkt #33-8, p. 3 of 3), and below that appears Attorney Albert's notary public stamp. However, Attorney Albert did not sign the jurat. Furthermore, the jurat simply says "subscribed and sworn to" and does not indicate that Morrill personally appeared before the attesting officer, Plaintiff's Attorney. Without an

-14-

appropriate, signed jurat stating that Morrill personally appeared before Plaintiff's Attorney and, in his presence, subscribed and swore to the truth of the statement's contents, Morrill's statement is *not* an affidavit. See, e.g., <u>Flatbush Chester Corp. v. D'Osoie</u>, 20 N.Y.S.2d 875, 877 (N.Y. Mun. Ct. 1940) ("[O]ne of the essential elements of an affidavit, the thing which in fact distinguishes it from every other declaration, is the jurat by which the statement is given the character of truthfulness so essential to the proper administration of justice. Hence, if this paper lacks a jurat it is not an affidavit. But a jurat which lacks the signature of the officer administering the oath is no jurat at all, because the signature is precisely the thing that makes the jurat. It must follow, therefore, that the paper purporting to be the affidavit of service of the summons in this action annexed to the summons is not an affidavit within the meaning of the statute, and the proceeding is defective."). Notwithstanding the multiple flaws in Morrill's statement, the Court has considered the substance of it and finds that it does not assist Plaintiff in establishing "good cause."

Here, after the County Defendants and City Defendants filed their Answers on June 20, 2016, asserting, <u>inter alia</u>, the defenses of insufficient process and insufficient service of process, Plaintiff's Attorney waited 67 days, until Friday, August 26, 2016, to speak with his paralegal, Morrill, about serving the court-issued summonses on the named defendants. As noted above, the 90-day period for serving the summonses and complaints under Rule 4(m)

was to expire on Monday, August 29, 2016. According to Morrill, she received the summonses from Plaintiff's Attorney on August 26, 2016, with the understanding that she would be serving them on August 29, 2016. However, Morrill states, on August 29, 2016, she "had an awful flu" and "could not leave [her] house that day due to illness." However, she "recovered enough by Tuesday, August 30, 2016[,] so that [she] could provide all the above [process] materials to the listed Defendants." Plaintiff's Attorney contends that the "sudden illness" of Morrill, his paralegal and process server, "can independently establish good cause" under Rule 4(m).

"Good cause is 'generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control.'" Eastern Refractories Co., Inc. v. Forty Eight Insulations, Inc., 187 F.R.D. 503, 505 (S.D.N.Y. 1999) (quoting National Union Fire Ins. Co. v. Sun, No. 93 Civ. 7170(LAP), 1994 WL 463009, at *3 (S.D.N.Y. Aug. 25, 1994)). Thus, "[a]n attorney's inadvertence, neglect, mistake or misplaced reliance does not constitute good cause." Id. (quoting Howard v. Klynveld Peat Marwick Goerdeler, 977 F. Supp. 654, 658 (S.D.N.Y. 1997), aff'd, 173 F.3d 844 (2d Cir. 1999)). It follows, then, that reliance on a process server to effect service is insufficient to merit a finding of good cause or an extension of time for service. E.g., Lachaab v. Zimpher, 1:15-CV-426, 2016 WL 3172869, at *3 (N.D.N.Y. June 6, 2016) (citing Micciche v. Kemper Nat'l Servs., 560 F. Supp.2d 204, 209-10

(E.D.N.Y. 2008) (rejecting counsel's attempts to establish excusable neglect due to "'numerous problems with the process server'" and "'absence of the full time paralegal who was out on maternity leave,'" which "purportedly left the office 'severely understaffed' and unable to perform 'normal follow up procedures;'" "[c]ircumstances such as these fail to establish excusable neglect") (citations and quotation to record omitted); Petrucelli v. Bohringer & Ratzinger, GMBH, 46 F.3d 1298, 1307 (3d Cir. 1995) ("[R]eliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service.") (citation omitted)).

Likewise, contrary to Plaintiff's Attorney's contention, illness alone is not a sufficient basis for finding good cause, or excusable neglect. See, e.g., Gesualdi v. J.H. Reid, General Contractor, 14-CV-4212(ADS)(GRB), 2017 WL 752157, at *5 (E.D.N.Y. Feb. 27, 2017) (in context of Rule 60(b) motion, illness does not demonstrate "excusable neglect"; "[a]lthough the court may consider [a] counsel's illness, regardless of its seriousness, illness alone is not a sufficient basis for setting aside a judgment") (quoting Carcello v. TJX Cos., 192 F.R.D. 61, 64 (D. Conn. 2000); alteration in original; citations omitted); Lehr Constr. Corp. v. Flaxer, No. 16-cv-4048, 2017 WL 464428, at *4 (S.D.N.Y. Feb. 2, 2017) ("While courts will occasionally rely on the illness or disability of a party or attorney when finding excusable neglect, these cases

involve extraordinary circumstances, such as a sudden, unexpected, or catastrophic illness, or the party has pointed to specific facts and circumstances demonstrating why the illness or disability caused them to miss the original deadline. . . . [C]ounsel's disability [Parkinson's disease] was not sudden, unexpected, or catastrophic.") (footnote omitted) (citing Kingvision Pay-Per-View Ltd. v. La Aroma Del Cafe, Inc., CV-02-0786 (CPS), 2006 WL 842398, at *1 (E.D.N.Y. Mar. 27, 2006) (finding that counsel's demylinating syndrome, "a condition . . . [that] causes fatigue and occasionally severe pain and cannot be treated," did not qualify as excusable neglect); other citations omitted).

The important factor in the cases considering illness as potential "excusable neglect," overlooked by Plaintiff, is that the illness or disability at issue must be counsel's—not that of someone acting on his behalf. See, e.g., Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580, 899 F. Supp. 1228, 1231 (S.D.N.Y. 1995) ("*Illness of counsel* has been regarded as valid grounds for excusable neglect where 'the illness is so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file.'") (quoting Islamic Republic of Iran v. Boeing Co., 739 F.2d 464, 465 (9th Cir. 1984); emphasis supplied). Here, Plaintiff's Attorney is attempting to rely on the illness of one of his employees, whom he had directed to effect service of process on the named defendants. However, it remains

"'counsel's responsibility to monitor the activity of the process server and to take reasonable steps to assure that a defendant is timely served.'" McKibben v. Credit Lyonnais, 98 CIV. 3358 LAP, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (quoting Cox v. Sandia Corp., 941 F.2d 1124, 1125 (10th Cir. 1991); citing Kleeman v. Rheingold, 598 N.Y.S.2d 149, 153 (1993) (duty owed by an attorney to his client to exercise care in the service of process "fits squarely and neatly within the category of obligations that the law regards as 'nondelegable'" and therefore "New York State's attorneys cannot be allowed to evade responsibility for its careful performance by the simple expedient of 'farming out' the task to independent contractors)). That principle applies here, where Plaintiff's Attorney knew that the attempt at service by Jakubec, his former process server, had been ineffectual. See Novak v. National Broadcasting Co., 131 F.R.D. 44, 46 (S.D.N.Y. 1990) (where "last information [the current attorneys] had on this subject was [the prior attorney]'s August indication that attempted service on Novello had failed[,]" "[i]t was incumbent on [the current attorneys] to ascertain whether service had been properly made")).

Plaintiff's Attorney, despite knowing that the person whom he had delegated to serve process was, at his instruction, planning to serve the defendants on the *last day* of Rule 4(m)'s time-period, did not follow up with her to make sure that the second attempt at service was successful. The Court notes that Morrill was an employee of Plaintiff's Attorney's law firm, so presumably he would

have known that she was out sick that day. That fact makes it even more inexplicable that Plaintiff's Attorney did not make any effort to contact Morrill, one of his employees, to confirm that she was able to perform the requested task, for which time was of the essence. Had he done so, Plaintiff's Attorney would have ascertained that Morrill was unable to complete service, and he could have done it himself. Rather, Plaintiff's Attorney apparently left performance of this time-sensitive task to the vagaries of Plaintiff's illness. Under these circumstances, the Court cannot find that Plaintiff has demonstrated "good cause." See, e.g., Klein v. Williams, 144 F.R.D. 16, 20 (E.D.N.Y. 1992) ("At very little effort and expense, Klein could have served the government within the period. Once counsel had notice of a service problem, no reason existed not to ensure that service would be made within the remaining time. The only explanation for plaintiff's failure is the inadvertence of counsel.") (internal citation omitted); see also Adams v. AlliedSignal Gen. Aviation Avionics, 74 F.3d 882, 887 (8th Cir. 1996) ("When counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails.") (citation omitted).

### 3. The Court Will Not Exercise Its Discretion to Extend the Time for Service

The Second Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." Zapata v. City of N.Y., 502 F.3d 192, 196 (2d Cir. 2007); see also id. at 197 ("[A] district court *may* grant an extension in the absence of good cause, but it is not required to do so.") (emphasis in original; citing Coleman v. Milwaukee Bd. of Sch. Directors, 290 F.3d 932, 934 (7th Cir. 2002) ("[T]he cases make clear that the fact that the balance of hardships favors the plaintiff does not *require* the district judge to excuse the plaintiff's failure to serve the complaint and summons within the 120 days provided by the rule. It does not abolish his discretion.") (emphasis in original)). The Court accordingly must consider whether it should exercise its discretion to grant an extension notwithstanding its finding that Plaintiff failed to demonstrate "good cause" for her deficiencies in accomplishing service. See id.

As an initial matter, the Court notes that the failure of a party to serve within the applicable limits cannot be excused "simply because the action will then be time-barred." Bloomer v. City of New York, CV 89-592 (RR), 1994 WL 92388, at *4 (E.D.N.Y. Mar. 3, 1994) (citing Frasca v. United States, 921 F.2d 450, 453 (2d Cir. 1990)). Nonetheless, the potential preclusive effect of the statute of limitations may be considered by the court in its analysis. Bloomer, 1994 WL 92388, at *4 (citing Merced v. Dept. of

Corr. of the City of N.Y., No. 84 CIV. 5926(CBM), 1988 WL 83416, at *1 (S.D.N.Y. Aug. 1, 1988)). The Court therefore has considered the fact that while a Rule 4(m) dismissal is "without prejudice," FED. R. CIV. P. 4(m), such a dismissal in the present case would effectively be *with* prejudice, because the three-year statute of limitations applicable to Plaintiff's Section 1983 claims has long since expired.

The Court has also considered that at least the attorneys for the County Defendants and the City Defendants, had actual notice of the lawsuit, though not all of their clients did.[4]

Against those factors that weigh in Plaintiff's favor, the Court notes that Plaintiff's Attorney's first process server, Jakubec, filed proofs of service (Dkt ##3-8, 3-9 & 3-10), affirmed to be true under penalty of perjury, stating that on May 31, 2016, she had served the named defendants with summonses, but she had not; witnesses on behalf of the City of Buffalo and Erie County have filed sworn affidavits that Jakubec only left copies of the Complaints with them. Then, on June 2, 2016, Jakubec purported to serve unofficial, improper summonses on some but not all of the named defendants. During the nearly two-month time period that

---

[4] The City Defendants note that not all of the individual defendants were placed on notice of Plaintiff's alleged causes of action by virtue of her notice of claim, since that document named only the City of Buffalo and City of Buffalo Police Department, and failed to name any of the other individual City Defendants. Moreover, in the notice of claim, Plaintiff did not identify the killing of her dog as a basis for constitutional claims against the City; nor did she allege any facts regarding the BPD's internal affairs investigation about which she now complains.

followed, Plaintiff's Attorney never requested an extension of time to complete service from this Court. Since Plaintiff filed her Complaint fairly late in three-year statute of limitations period (only approximately 90 days remained), she "had even more reason to seek a timely extension of the time for service of process." <u>Carl v. City of Yonkers</u>, 04 CIV. 7031(SCR), 2008 WL 5272722, at *6 (S.D.N.Y. Dec. 18, 2008), <u>aff'd</u>, 348 Fed. Appx. 599 (2d Cir. 2009) (unpublished opn).[5]

Instead, Plaintiff's Attorney waited until there were only days left on the 90-day period under Rule 4(m) to delegate the responsibility to effectuate service to his paralegal, Morrill. According to Morrill, she was specifically instructed to perform this task on August 29, 2016—the last day of the 90-day period under Rule 4(m). It was not until the County Defendants moved to dismiss the complaint that Plaintiff's Attorney made a request, in his Memorandum of Law, for an extension of time to request service.[6]

---

[5]

The time during which the three-year statute of limitations was tolled by Rule 4(m)'s period for service of process itself expired on or about November 28, 2016. "[T]he statute of limitations for the underlying claim is tolled during [Rule 4's service] period." <u>Zapata</u>, 502 F.3d at 194 n. 4 (citing <u>Frasca</u>, 921 F.2d at 453). However, "if the plaintiff's action is dismissed for a failure to serve within [the number of] days [set forth in Rule 4(m)], 'the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to [its] termination . . . .'" <u>Id.</u> (quoting <u>Frasca</u>, 921 F.2d at 453 (citing <u>Geiger v. Allen</u>, 850 F.2d 330, 334 (7th Cir. 1988)).

[6]

This request is procedurally defective insofar as Plaintiff's Attorney failed comply with Rule 6(c)(1) of the Federal Rules of Civil Procedure or Rule 7(a) of the Western District of New York's Local Rules of Civil Procedure. For instance, Plaintiff's Attorney failed to file a written notice of motion or cross-motion or to submit an affidavit in support of the relief he sought in the caption of his memorandum of law.

Additional factors weighing against Plaintiff are that the County Defendants and City Defendants were not evasive, unavailable or unknown. Nor did they attempt to hide the defects in service. Cf. FED. R. CIV. P. 4(m) advisory committee's notes ("Relief may be justified, for example, . . . if the defendant is evading service or conceals a defect in attempted service."). Here, for instance, the County Defendants' answer (Dkt #5) and amended answer (Dkt #8) specifically apprised Plaintiff of the following affirmative defenses: "Service of process was insufficient as to each of these Answering Defendants. . . . Process was insufficient as to each of these Answering Defendants. . . . Personal jurisdiction is lacking as to each of these Answering Defendants." (See Dkt #5, p. 3 of 22; Dkt. #8, p. 3 of 23).

The Court cannot ignore Plaintiff's Attorney's dilatoriness in making arrangements to accomplish service, and his delegation of this important task to one of his subordinates, without any attempt to follow-up and ensure that service was performed. Faced with possible dismissal of the Complaint, Plaintiff's Attorney attempts to obscure his lack of diligence behind his paralegal's alleged "sudden illness." As discussed above, however, it is well-settled that the duty owed by an attorney to his client to exercise care in the service of process "fits squarely and neatly within the category of obligations that the law regards as 'nondelegable[.]'"

<u>Kleeman</u>, 598 N.Y.S.2d at 153.[7] Furthermore, the Court has considered Plaintiff's Attorney's intractable position, in the face of a mountain of evidence to the contrary, that service was properly accomplished, and his presentation of a frankly specious argument that Rule 2(t)(l) of the Western District Administrative Procedures Guide for Electronic Filing establishes that the defendants consented to service of process by electronic means. As the County Defendants' Attorney explained in his Reply (Dkt #37, ¶¶ 25-34), this argument "would elevate the Western District of New York Administrative Procedures for Electronic Filing above the Federal Rules of Civil Procedure . . . and vitiate virtually all of Rule 4 of the Rules of Civil Procedure, or, at a minimum, Rules 4(e-j) thereof, which prescribe particular means of serving process. . . ." (Dkt #37, ¶30).

In the context of motions for vacatur, litigants typically seek "relief from counsel's error" under Rule 60(b)(1) on the "theory that such error constitutes mistake, inadvertence or excusable neglect.".

---

[7]
    New York's Rules of Professional Conduct for attorneys provides that "a lawyer shall . . . withdraw from the representation of a client when (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client. . . ." NY ST RPC, Rule 1.16(b)(2). The Rules "make it clear that if an illness interferes or potentially interferes with *counsel*'s competence, diligence, and effective representation of a client, the prudent and professionally responsible attorney must make alternative arrangements for his clients[.]" <u>Carcello v. TJX Companies, Inc.</u>, 192 F.R.D. 61, 65 (D. Conn. 2000) (emphasis supplied). It makes no sense for a lesser standard to apply when the illness is not counsel's, but that of one of his employees.

The Court is "acutely aware," Harper v. City of N.Y., No. 09-CV-05571 JG SMG, 2010 WL 4788016, at *10 (E.D.N.Y. Nov. 17, 2010), aff'd, 424 F. App'x 36 (2d Cir. 2011), that behind counsel stands a plaintiff who has alleged violations of her constitutional rights. If the claims against the City Defendants and County Defendants are dismissed with prejudice due to Plaintiff's Attorney's omissions, Plaintiff will lose her chance to pursue those claim. Nonetheless, the Court cannot overlook Plaintiff's Attorney's "continuous disregard of the procedures that govern this action," id., which "reflects a troubling pattern of carelessness by counsel." Id. Under the circumstances discussed above, the Court sees "no justification" for extending the time to serve the City Defendants and the County Defendants. See id. It is a settled albeit unforgiving principle that "a person who selects counsel cannot thereafter avoid the consequences of that counsel's negligence." Andree v. Ctr. for Alt. Senten. and Empl. Services, Inc., 92 CIV. 616(TPG), 1993 WL 362394, at *2-3 (S.D.N.Y. Sept. 14, 1993) (citing Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986) (noting that it has "consistently declined to relieve a client under subsection (1) of the 'burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload'") (quoting United States v. Cirami, 535 F.2d 736, 739 (2d Cir. 1976)).

**CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the First Motion to Adjourn, First Motion to Dismiss for Lack of Jurisdiction Dismissing Plaintiff's Complaint with Prejudice, and First Motion for Judgment on the Pleadings Dismissing Plaintiff's Complaint with Prejudice (Dkt #29) by defendants Paul Delano, Daniel Derenda, Norman G. Hartman, Ray Krug, Patrick O'Rourke, One Officer John Doe of the City of Buffalo Police Department, the City of Buffalo, and the City of Buffalo Police Department is **granted**; and it is further

**ORDERED** that the Motion for Judgment on the Pleadings (Dkt #18) by the County of Erie, Erie County Sheriff Timothy Howard, and One Officer John Doe of the Erie County Sheriff's Department is **granted**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt #1) is dismissed as to Paul Delano, Daniel Derenda, Norman G. Hartman, Ray Krug, Patrick O'Rourke, One Officer John Doe of the City of Buffalo Police Department, the City of Buffalo, the City of Buffalo Police Department, the County of Erie, Erie County Sheriff Timothy Howard, and One Officer John Doe of the Erie County Sheriff's Department; and it is further

**ORDERED** that the Clerk of Court terminates the following individuals as parties: Paul Delano, Daniel Derenda, Norman G. Hartman, Ray Krug, Patrick O'Rourke, One Officer John Doe of the

City of Buffalo Police Department, the City of Buffalo, the City of
Buffalo Police Department, the County of Erie, Erie County Sheriff
Timothy Howard, and One Officer John Doe of the Erie County
Sheriff's Department.[8]

      **SO ORDERED.**

                              **S/Michael A. Telesca**

                              HON. MICHAEL A. TELESCA
                           United States District Judge

Dated:     May 12, 2017
            Rochester, New York.

---

[8]
    The only defendants that remain are the City of Lackawanna and Lieutenant
Aaron Brennan of the City of Lackawanna Police Department. As noted above, <u>see</u>
n. 2, they have not moved to dismiss the complaint; nor have they joined in the
County Defendants' or the City Defendants' motions seeking dismissal of the
Complaint.